Mary Cline vs. Crescent City Railroad Co. and City.

## No. 10,721.

MRS. MARY CLINE, INDIVIDUALLY AND AS TUTRIX, VS. CRESCENT CITY RAILROAD COMPANY AND CITY OF NEW ORLEANS.

A municipal corporation vested by law with control over its streets, is bound to keep the same in good order and condition, sufficiently safe to prevent injury to travellers thereon.

It may grant to a railroad company the privilege of building its tracks and running its cars thereon, with the obligation of keeping them in proper order and condition.

Such grant does not, however, exonerate the city from the duty which it is bound primarily to fill.

Independent of its contract, such railroad company is bound to keep its own road, tracks and rails in proper condition and order.

Travellers on the streets have a right to use the tracks of the company and are not trespassers.

A party using due care and diligence when using such street and tracks, has a right to recover from the railroad company for injury inflicted by its gross fault and negligence, where the cause is proximate.

A railroad company which neglects to keep its road and tracks in good condition is liable to a party injured by a fall on a loose rail and protruding spike, in consequence of which his skull is fractured or perforated and death ensues.

The failure of a municipal corporation to keep its streets in good order and condition where the cause of the injury is not proximate, does not make it responsible in damages to the sufferer.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

———

*B. R. Forman* for Plaintiff and Appellee:

1. It is the legal duty of the City of New Orleans to keep its streets in repair, Act 20, 1882, Secs. 7 and 36, pp. 20 and 30, and is liable in damage to a person injured by a dangerous place in a public street. O'Neil vs. New Orleans, 30 An. 229; Fennimore vs. New Orleans, 20 An. 124; Dillon, Vol. 2, Secs. 788 and 789; Cline vs. Crescent City Railroad Company, 41 An. 1041; Barnes vs. District of Columbia, 91 U. S. 540; Everston vs. Gunn, 99 U. S. 660; Cleveland vs. King, 132 U. S. 295.

2. It is the legal duty of a street railway company, traversing with its tracks and cars the public streets of a city, to keep its rails, tracks, the space between the rails and contiguous thereto in good order and repair and safe so as not to obstruct or render dangerous the free use of the street, and is liable to damages to a person injured by a breach of that duty. Domingues vs. New Orleans Railroad Company, 35 An. 751; Cline vs. Crescent City Railroad Company, 41 An. 1041.

3. In assessing damages where there is gross negligence and a flagrant breach of public duty, it is proper to blend the interest of society and of the injured individual, and to allow such damages as would not only fully compensate the injured person for his injuries, his pain and his sufferings, but also such as would prevent a repetition and serve as a warning. Black vs. R. R. Co., 10 An. 40.

Merely compensatory damages allowed in following cases: Choppin vs. R. R.

Co., 17 An. 19, loss of a leg, $25,000; Summers vs. R. R Co., 34 An. 139, broken elbow, $7500; Ketchum vs. R. R. Co., 38 An. 777, loss of arm, $10.000; Wardle vs. R. R. Co., 35 An. 202, shock to spine, $5000; Peniston vs. R. R. Co., 34 An. 778, broken leg, $6000; Barksdell vs. R. R. Co., 23 An. 180, loss both legs, $15,000; Domingues vs. R. R. Co., 35 An. 751, bruises, $1500; Spring Co. vs. Edgar, 99 U. S. 645, bruises, $6500; City of Panama, 101 U. S. 453, broken arm, $15,000; R. R. Co. vs. Gladman, 15 Wall. 401, $9000; R. R. Co. vs. Stout, 17 Wall. 657, injured foot, $7500; R. R. Co. vs. Herbert, 116 U. S. 642, loss of leg, $10,000; R. R. Co. vs. Mares, 123 U. S. 710, loss of both legs, $20,000; Miller vs. Herves, 1 Woods 363, broken ribs, $8000; R. R. Co. vs. Drysdale, 51 Ga. 644, broken arm, $3000; Westerville vs. Freeman, 66 Ind. 255, broken hip, $2000; R. R. Co. vs. Donahue, 70 Pa. 119 loss of toes, $5,216.66; Campbell vs. Portland, 62 Maine 552, $9,500.

————

*John M. Bonner* and *Farrar, Jonas & Kruttschnitt*, for the Railroad Company, Defendant and Appellant:

1. The answer of a defendant containing a prayer for a judgment against a co-defendant, that was not served on the co-defendant and not answered by the co-defendant, does not raise any legal issue between them in the suit.

2. Where two defendants have been joined in a suit, one of them, without being cited or regularly called in warranty by the other, is not bound even to read the answer of its co-defendant. C. P., Art 383.

3. Where two defendants, whose liability arises from different sources, have been united in the same suit, they have a right to sever in their defences, and ask for separate trials, and this right to a separate trial can not be legally refused when timely asked for. 38 An. 186; 39 An. 1030; 40 An. 417; 41 An. 1041.

4. An ordinance of the city, prescribing the maximum loads to be hauled over the streets, in force when a contract is made with the city to keep certain streets in repair, forms a part of the obligation of the contract and should be received in evidence.

(a) "A party is always considered as binding himself in accordance with the laws that may in any way affect his contract." 12 An. 720; 18 An. 90; Hen. Dig. 1014 VI. a.

(b) "The obligation of a contract consists in its binding force on the party who makes it. This depends upon the laws in existence when it is made; these are necessarily referred to in all contracts, and forming a part of them, as the measure of the obligation to perform them by the one party, and the right acquired by the other." Cooley Con. Lim., 4th Ed. 348: 2 How. 612; 107 U. S. 775.

5. One who directly commits an act that is the cause of damage to another must answer for it. 35 An. 752.

6. When a contract specifically embodies the remedy to be used in its enforcement, this becomes the law of the contract and by implication excludes all other remedies.

"The remedy and the liability were created by the same statute. This being so, the remedy provided is exclusive of all others." 20 Wall. 526, 527.

"Where a statute creates a right or liability and prescribes the remedy, the remedy prescribed is exclusive, and must be strictly pursued." 120 U. S. 783.

So where a contract does not impose an unlimited obligation, but specifically defines the extent of the liability, this limitation is a necessary part of the contract and can not be ignored in its interpretation.

# NEW ORLEANS, MARCH, 1891. 329

Mary Cline vs. Crescent City Railroad Co. and City.

"Agreements legally entered into have the effect of laws on those who have formed them."

They can not be revoked unless by mutual consent of the parties or for causes acknowledged by law.

They must be performed in good faith. R. C. C., Art. 1901 and Art. 1945.

7. There is no law of this State that authorizes a municipal corporation to let out the repair of its streets and makes it the duty of the contractor to comply with his undertaking.

The existence of such a statute is indispensable to give a third person a right of action for the breach of the public duty thus imposed or assumed. Sher. and Red. on Neg., Secs. 345 and 353; Phillips vs. The Commonwealth, 44 Pa. St. 197; Robinson vs. Chamberlain, 34 N. Y. 989; Fulton vs. Baldwin, 37 N. Y. 648.

In the absence of such a statute a contract made with a municipal corporation is a simple contract, like any other business contract, and should be so construed. Loeber et al. vs. N. O. & Car. R. R. Co., 41 An. 1151; Schwartz vs. Flatboats, 14 An. 244; Nickerson vs. Bridgeport Hydraulic Company, 33 An. R. II., and note; Ferris vs. Carson Water Co., The Reporter, Vol. XII, 90.

Under both the common and the civil law, an agent is personally responsible for doing something he ought not to have done, but not for not doing something which he ought to have done.

For non-feasance or mere neglect in the performance of a contract obligation, the agent is responsible to his principal alone. Delaney vs. Bochero, 34 An. 1128; Thomp. on Neg., Vol. I, 237.

8. The facts disclose a clear case of contributory negligence.

In order to recover, it must appear that the party injured " was using reasonable and ordinary care to avoid the accident." Dil. on Mun Corp. 3d Ed., Sec. 1020; 81 Ill. 300; 51 Vt. 131; 84 Ill. 82; 52 Ill. 270; 33 Ohio St. 246; 42 An. 546.

"If the party injured knew of the defect or obstruction and ought reasonably to have avoided it, and did not, he can not recover." Dil. on Mun. Corp., Sec. 1026; 61 Barb 437; 33 Ohio St. 246; 8 Allen 137; 42 An. 546.

"A city is not liable to one who sustains an injury by reason of defective streets, if by looking, the injury could have been avoided, and no excuse is given for failure to look." 17 Md. 324; 22 N. E. R. 235; 42 An. 546.

The burden of proving due care is on the plaintiff. 12 Pick. 176; 32 Me. 46, 574; 4 Gray, 178, 395, 367; 7 Gray 100; 6 Iowa 443.

9. The damages suffered by the deceased arise from the mental and physical pain endured between the time of his fall and his death—where death was instantaneous and arose from a fractured skull, there could be no conscious pain or suffering, and damages should not exceed a nominal sum.

The Act 71 of the Acts of 1884, amending Art. 2315, R. C. C , so as to give an action for the damages suffered by the survivors mentioned in said article, is patterned after Lord Campbell's act and similar damage acts, existing in other States, and should be construed in the same way those acts have been construed.

The damages suffered in such cases are limited and restricted to the actual pecuniary loss occasioned by the death.

"No compensation can be given for wounded feelings, or the loss of comfort and companionship of a relative." Thompson on Neg. 1289, Sec. 90; Patterson Railway Accident Law, p. 486, and Secs. 406, 410, 411; Rorer on Railroads, Vol II, 1167; Wood's Railway, Vol. III, p. 1536, Sec. 414.

Damages, based on pecuniary loss, being susceptible of easy estimation, courts do not hesitate to set aside verdicts for excessive amounts. Thompson on Neg., 1292; Wood on Railway, 1539.

*Carleton Hunt* for the City of New Orleans, Defendant and Appellant:

Where it is admitted that the City of New Orleans never had placed at its disposal the requisite means for keeping the streets in repair or in order, as required by the charter, and has never had the funds required for drainage, it is not liable in a suit for damages alleged to be partly due to the bad condition of the streets.

In an action sounding in damages against two debtors sued for a joint offence, it is well settled, where the parties are not in *pari delicto*, that the principal delinquent only is responsible. Potheir on Obligations, p. 282; 23 Pickering 33; 11 Mass. 377; 22 Pickering 181; 5 Gray 350; 51 N. Y. Rep. 244.

In such case, *respondeat superior* is too loose and large a maxim and recourse must be had to principles.

Where the efficient cause of death is caused by the neglect of one of two parties who are used *in solido*, and there is practically no connection with the other party sought to be held, judgment must be rendered against the party in fault.

Where all parties are before the court, justice will be rendered as to all. The law abhors a multiplicity of actions. C. P. 382; 41 An. 1040.

The case at bar is covered by the facts as well as by the reasoning of the court in Dominguez vs. Orleans R. R. Co., 35 An. 471.

----

The opinion of the court was delivered by

BERMUDEZ, C. J. This is a suit in damages, alleged to have been sustained in consequence of the death of the husband of plaintiff and father of her minor daughter, occasioned by the gross fault and negligence of the defendants, who are sought to be held liable *in solido*.

The case was once before this court, 41 An. 1031, on exceptions by the railroad company, which had been maintained below but which were overruled on appeal, the case being remanded for further proceedings.

The fundamental averment is:

That, on January 21, 1889, John Cline, husband and father aforesaid, was driving a vehicle gently on Calliope street, between St. Charles avenue and Prytania street, in this city, with due care and caution, without any negligence on his part, ignorant of the dangerous condition of that street, when the right fore-wheel of his wagon got into a deep hole by the side of the track of the railroad company, ran into a loose rail, was suddenly and unexpectedly stopped thereby; that by the shock thus occasioned Cline was violently thrown from the vehicle against the loose rail and against a spike protruding therefrom; the fall resulting in the fracture of his skull and in

his consequent death, after suffering great agony of pain in body and mind.

It is specially charged that this condition of the street was well known to the officers of both defendants and especially the railroad company, or if not known, could with reasonable diligence have been known, and the danger averted had they done their duty before the happening of the accident.

The prayer is for $30,000 damages.

The railroad company excepted, but its objections were disposed of as has already been stated.

The city pleaded the general issue and averred a contract with the railroad company whereby it had agreed to keep the streets on which it passed in proper condition and order, and that, were judgment rendered against the city, it should recover a like judgment against the railroad company, which was thereby called in warranty but on whom no service was made.

The railroad company answered by a general denial also, pleading that the plaintiff was no party to the contract alleged by the city and can not sue under it and that said contract contains the remedy agreed on, in case of violation, which is exclusive of all others, namely, coercion to specific performance by the city.

It further avers that its railway was properly constructed; that since then it was, on Calliope street, put out of order by improper drainage and consequent accumulation of water; that another cause of the condition in which it was put is the constant heavy traffic through that street and the illegal loads hauled over it; all of which made it impossible to keep said street in better condition, and that the condition in which it was on the day of the alleged accident was not due to any fault or omission of this defendant.

The case was tried by a jury who returned a verdict for $7500 against both defendants, with a reserve of the rights of the defendants as against each other. Judgment was accordingly rendered.

Hence, this appeal by both defendants.

The circumstances of the accident may be considered as having been substantially proved; but has the evidence established that the City of New Orleans and the railroad company are *equally* liable and that even in default, the plaintiff himself is not guilty of contributory negligence, sufficient to defeat his right of action against both or either of the defendants.

The law governing a case of this description and the principles upon which it rests are plain enough; but it is not always easy to apply them to occurring cases which generally differ in some significant matter of detail.

The testimony is ordinarily conflicting and such that it is difficult to arrive at the real facts in dispute.

In the present instance the law and principles have been, to a considerable extent, expounded, when the case came up on the exceptions; but the averments of the petition were taken for true in dealing with the preliminary defences, and had the plaintiff established on the trial, after the remanding of the case, *all* the facts averred, full recovery could have taken place, leaving out of view in this statement the *quantum* of damages.

There can be no doubt that a city is under the obligation of keeping its streets, sidewalks, etc., in good order of repair, so at least as to prevent serious accident or injury to persons using the same or to their property; and that, where such happen by the heedlessness or fault of the corporation having previous knowledge of the bad condition of the street, sidewalk, or particular dangerous spot, and without any contributive act, whether by commission or omission of the party afflicted, the corporation can be held to repair the damage occasioned.

It is also well settled in law and jurisprudence that although a municipal corporation, by virtue of the right with which it is vested of control over its streets, can legitimately grant to a railway company the privilege to build its track and run its cars on the same, imposing upon it the burden of keeping them, from curb to curb or rail to rail, in good order and condition so as to prevent injury, as it is itself bound to do, the concession of the grant and the imposition and acceptance of the burden do not relieve the corporation from liability should the company fail to comply with its obligations, and by its negligence and default, inflict injury to one using due care and precaution and not guilty of contributory neglect.

It is also well recognized that a party injured has a double action against both the city and the railroad company regardless of the contract between them, holding each as primarily responsible, and that when the city is mulcted it has the right to recover against the railroad company in the same action, if both are defendants and the

city has properly brought in the railroad company by a call in warranty, or a distinct suit.

It is likewise firmly established that an injured party in order to recover must be shown not to have been guilty of any contributory negligence, that is, the careless commission or omission of acts which, if prudently done or not done, would have avoided the occurrence of the injury occasioned by the heedlessness of another and which is considered as the *proximate* cause of the accident.

The evidence in this case establishes the stubborn facts of the existence of the hole, of the loose rail and protruding spike on the side, the fall of the man, the fracture of his skull on the rail and spikes and his consequent destruction and death.

Certainly, there are three parties to this accident who may be charged with negligence.

As against the driver, it is claimed that the hole was visible, as it was four feet long, two feet deep and four inches wide, and it was about 3 o'clock P. M. when the wheel of his wagon got into it; that he must have seen it and should have seen it; that if he did not see it, it was because he did not do his duty in looking forward; that if he saw it he should have avoided it by stopping in time and taking a different course; that if he did not see it it was his own fault; that he was guilty of contributory negligence, and that his representatives have no right to complain and seek indemnity through him.

As against the city, it is urged that it was bound to keep its streets in good order and condition; that had it done so the hole would never have existed, or would have been stopped in time and the accident would not have happened; that its defence of penury is bad and that its contract with the railroad company did not exonerate it from the obligation.

As against the railroad company, it is pressed that it was bound to keep in like good order and condition the streets through which it ran its tracks and cars, whether under the contract, or independent of any agreement to that end; that surely it was bound to keep its *tracks*, *rails*, and *spikes*, designed to fasten the same down, so that no injury could be produced thereby to any traveller on the streets, although using the same with more or less usual inattention, and that if the condition of the loose rail and protruding spikes be the *proximate* cause of the death, it is liable in damages.

It can not be reasonably supposed that the driver knew of the con-

dition of the hole, saw it and intentionally ran the fore right wheel of his wagon into it. The size and appearance of the hole were not such as unnecessarily and unavoidably must have provoked attention. The hole was such as anyone driving on the track may not have noticed. The deceased had a right to drive on the track. The right of way, or franchise, conceded by the city to the railroad company, did not deprive the deceased, or anyone else, running vehicles on the street, from the right of using any part of the street, or the track itself. There was no trespass.

But even if the driver had seen the hole and had not avoided it nothing shows that he knew of its dangerous character. Could he be really charged with negligence, it would not be with that sort of negligence technically known as *contributory*, which is the commission or omission by the party of an act amounting to a want of ordinary care as concurring or coöperating with the negligent act of another and which is the *proximate* cause or occasion of the injury complained of. To constitute contributory negligence there must be a want of ordinary care and a *proximate* connection between that and the injury. Beach on Const. Neg. 7.

No doubt the city was in default. The hole had been in the condition known for more than two weeks. Accidents had occurred, but which had produced no grave injury worth being judicially complained of. The city must be considered as having had notice of the condition of the hole and it is no excuse for it to plead penury, or shift the responsibility on the railroad company so as to avoid liability. The city should have notified the company; but primarily, it was bound to put the hole in a condition not to be dangerous. It should be blamed for not having so done.

Nevertheless, the heedlessness of the city in the premises, however censurable, does not fasten upon it the responsibility in damages sought to be saddled upon it.

The falling of the right fore wheel of the wagon into the hole caused a shock; that shock dashed the driver from the vehicle and he was flung with some violence. The evidence shows that several other travellers on the street and on the track had met with similar accident, had been thrown from their carts on the pavement, but none were killed or dangerously hurt. The unfortunate fellows were more or less bruised and that was all, although much in itself to some extent.

In the present instance the driver would have sustained no further injury had it not been that a condition of things existed at the time which did not exist previously, when the other accidents occurred. The city is not sued now for the suffering which the driver sustained in consequence of bruises inflicted by the fall. It is sued for damage suffered in consequence of the death of the driver, and the fact is that the city is not guilty of any negligence which was the *proximate* or direct cause of that catastrophy.

The responsibility must rest on other shoulders. The defences announced of the railroad company have no bottom to stand upon. Conceding all the facts averred, which would seem to tend to show a condition of things amounting somewhat to *vis major* or uncontrollable circumstances, the railroad company can not be heard to say that they were of such a character as to prevent it from stopping the hole and preventing it from being dangerous, from nailing down securely the loose rail and fastening steadily the protruding spikes. The plaintiff could sue independent of any contract between the city and the company.

Though true it be, that the hole was somewhat dangerous and was the cause of the shock which occasioned the fall, the certainty is, that but for the loose rail and protruding spikes the traveller would not have met with an untimely and sudden death. He would have fallen, would have received some bruises, for indemnifying which he would not probably have sued either the city or the company; but he would *not* have been *killed!*

The cause, *causa causans*, of the death was the violent coming in contact of the skull of the deceased with the loose rail and the protruding spikes, in consequence of which the skull was fractured, or perforated, with almost instantaneous death as the result.

If, under the facts and the law, this railroad company can not be held responsible, but must be excused, what is the case in which a company can be held liable for omissions of duty which are the direct cause of irreparable calamity?

In the consideration of this case and the law and jurisprudence applicable to it, we have consulted with advantage a new work, just issued, on "*Roads and Streets*," by Elliott, which is quite commendable.

It is very difficult to compute the damages to which the plaintiff,

in her own right and as tutrix, is entitled for the loss sustained by the death of the husband and father.

When she opened his estate she produced the certificate of the coroner to prove the death, and she established from it that he was 62 years of age.

It is claimed that according to the life insurance time tables he would probably have lived twelve years more, and it is insisted that his earnings during that time would have amounted to a considerable sum, and that this amount at least should be recovered in this action.

It may be, and it may not be, that the party would have lived that time. He might have died the next day, the next month, the next year, by disease, or some accident, or some other unforeseen cause.

His earnings were small. The evidence in that respect is entirely unsatisfactory and unreasonable. The fact is that he was a wagon driver doing jobs; but he had to provide for a stable and shed for his horse and wagon, for feed for the animal; he had to supply his own wants. If he earned $1.50 or $2 a day he could have saved very little to provide for his wife and daughter, who it is to be presumed, owing to their age and condition in life, must have been able to support themselves to some extent.

It is extremely doubtful that the earnings of the poor man could have amounted in the end to $1000, but to avoid doing his representatives any injury, we will allow that sum, thinking it ample.

It is therefore ordered and decreed that the verdict of the jury and the judgment thereon as regards the City of New Orleans be quashed and reversed, and that there be judgment in favor of the city, with costs in both courts; and it is further ordered and adjudged that the verdict and judgment thereon against the railroad company be amended so as to reduce the amount to $1000, with interest as allowed and costs below, and that thus amended, said judgment be affirmed at appellee's costs.