114 LOUISIANA REPORTS.

(38 South. 157.)

No. 15,313.

BURNS et ux. v. RUDDOCK-ORLEANS CYPRESS CO.

(Feb. 27, 1905.)

EVIDENCE—WEIGHT—INJURY TO EMPLOYÉ—DE-
FECTIVE APPLIANCES—REPAIRS.

1. In civil as in criminal cases, a theoretical possibility, wholly unsupported by proof or probability, will not outweigh direct testimony which, to the ordinary mind, carries conviction beyond a reasonable doubt.

2. It does not follow, because an ignorant boy may have failed to appreciate a danger to which he was subjected by reason of defective appliances, that his employer, charged with the obligation of furnishing him with appliances reasonably safe, should not have known such danger, when; by the exercise of proper care in the matter of inspection. he, the employer, might have been informed thereof.

3. The master is bound, not only to exercise due care that the appliances furnished for the use and protection of the servant are reasonably safe and sufficient, when furnished, but to see that they are maintained in that condition, and, unless the danger is obvious, or he is particularly warned concerning it, the servant has the right to rely upon the superior intelligence of the master to protect him therefrom.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by Moses Burns and wife against the Ruddock-Orleans Cypress Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Harry Hinckley Hall, for appellant. Armand Romain, for appellees.

Statement of Case.

MONROE, J. Plaintiffs allege that their minor son, whilst employed by defendant behind a gang of circular saws, received an injury from which he died; that the accident was the result of the negligence of the defendant in failing to warn the boy of the danger of his position, and in failing to keep in repair a fender, the purpose of which was to protect him from flying pieces of wood driven by the saws; and they pray that they be awarded the damages to which the de-

ceased would have been entitled at the moment, and to which they, by reason of being deprived of his society, affection, and support, became entitled by reason of his death. The answer admits that the deceased received an injury at or about the time stated in the petition, and that the defendant was informed that his death resulted therefrom, but it denies that such injury was caused by defendant's negligence, and alleges that the deceased had assumed the risk thereof, and by his contributory negligence released defendant from liability.

The facts, as we find them, are as follows:

The deceased, a negro boy about 17 years of age, employed by the defendant in its lumber mill, was assigned to duty behind a gang of six circular saws, which, being about four feet apart, were attached to and driven by the same shaft. The work which was being done at the moment of the accident was the cutting into lengths, measured by the distances between the saws, of slabs to be thereafter converted into laths, and the duty of the boy was to receive the pieces thus cut, as also pieces which might pass between the saws without being cut, and see that they reached an automatic carrier which operated in a' trough between him and the saws.

As the tendency of the saws was now and then to drive loose pieces of wood with great velocity in the direction of the boy, a swinging fender, wide enough to extend from one end of the gang of saws to the other (say, 25 feet), and about four or five feet high, constructed of 2x12 planks, running horizontally and bolted to scantling arranged perpendicularly, was provided for his protection, the idea being that the pieces so driven should strike against the fender, and, dropping down, should slide or be drawn under its lower edge into the trough on the carrier, and thus be removed out of the way. The boy, who was then in good health, was engaged in the discharge of this duty on the

morning of October 28, 1903, when he suddenly fell to the floor, as though he had been knocked down. Those who saw him fall went immediately to his assistance. They testify that they found him lying on his back, apparently in great agony, screaming, and rubbing his stomach, as though a blow had been received at that point, and that, when asked what was the matter, his reply was, "Oh, Lordy!" or "Lord have mercy!" He was removed to his father's house, and a physician was called, who testifies that he diagnosed the case as one of internal injury on the left side; that there was not much to be seen in the way of contusion, and that he told the family that he would prefer waiting for 48 hours before giving a prognosis, but that the boy died on the following day; and that, assuming him to have been in good health, the blow which produced that result must have been a very violent one.

The father of the boy, who nursed and rubbed him during the night, testifies that the mark of the blow was visible on the left side, below the ribs.

It appears that the lower edge of the fender was constituted of two planks, say 12 feet 6 inches each in length, placed end to end, and that from the lower edge (beginning at the joint thus made) of one of the planks a piece was or had been split off, leaving an oblong hole underneath. There is some little difference between the witnesses as to the size of the hole, and as to whether it had existed before, or was made at the moment of, the accident.

Our conclusion is that it was about 2½ inches wide at the joint, and extended for about 2½ feet along the lower edge of the plank, tapering to nothing in width at the other end; and that it had been there before the accident, or else that the piece, the detachment of which from the plank left the hole, had become partially detached, and in its loosened condition, was driven against the boy by another piece impelled by the

saws. The evidence fails to show that there had ever been any inspection of the appliance in question. It is true that the defendant's general foreman testifies that he inspected the machinery "every day, morning and night." Upon being further examined, however, he admits that the inspection was not made by him personally, but by the millwright, who was not called as a witness. The subforeman in charge of the particular department where the accident occurred being asked, "Do you ever inspect that part of the mill in which the accident occurred?" replied, "Well, I am always on the lookout, and, whenever I see anything wrong that I cannot fix I report it to Mr. Thoman" (Mr. Thoman being the general foreman). Upon the Sunday after the accident (which occurred on Wednesday) the fender was repaired, to the extent that the hole was stopped; and in January, following, the fender was rebuilt and covered, on the side next to the saws, with sheet iron. The case was tried in the district court without a jury, and there was judgment for plaintiffs in the sum of $1,200. The defendant has appealed, and the plaintiffs have answered, praying that the amount of the award be increased.

### Opinion.

The learned counsel for the defendant says in his brief:

"No one saw Burns struck, and no one knows by what he was struck. * * * Whilst, it is, of course, possible that a piece of wood may have been thrown from the saw and killed the decedent, it is equally possible that some enemy may have struck him in the side with a hammer or other instrument. No one can say this was not the case."

The testimony in the record seems as certainly to exclude every other reasonable hypothesis as to the cause of the death than that set up in the petition, as would testimony, in a prosecution for murder, to the effect that the accused, standing in juxtaposition to the deceased, pointed a loaded pistol at him and discharged it, and that the deceased fell dead, with a bullet through his

brain, since in such a case no witness would be able to testify that he saw the bullet leave the pistol and enter the brain of the deceased, and hence it might be argued that there existed a possibility that the death-inflicting missile had come from some other source. The existence of such a possibility would not, however, prevent a conviction and execution for murder. And so the existence in this case of the possibility suggested in argument, but wholly unsupported by proof of probability, cannot outweigh the direct testimony, which, in the ordinary mind, can leave no reasonable doubt as to the cause of the death.

The next proposition on behalf of the defense is stated as follows:

"Whatever danger there was was as obvious to the employés as to the employer; that is, if, as averred in the plaintiff's petition, it was dangerous, generally, to work near these saws, the danger was apparent, for it could only consist of flying pieces of wood hurled violently, plainly visible to all. No man, or even child, needs to be informed that a piece of wood hurled violently will hurt if it strikes him. If the best-devised protection known is employed, and upon one single occasion fails to protect, the result must be considered as unavoidable accident— one of those risks assumed by the servant. This argument is based upon the assumption that it is not proven that the deceased was struck by any piece that passed through the so-called hole, and that the so-called hole impaired the efficiency of the fender."

We do not understand that all the wood that was cut by the saws was driven violently back by them, and still less that the pieces driven back always passed through the hole in the fender, or always struck against the piece which eventually became detached. If, as the plaintiffs contend, as their witnesses testify, and as we think the more probable, the hole was there before the accident, it may well have been that such a condition had not existed long enough to impress the boy with the danger to which he was thereby subjected. But it by no means follows because a negro laborer, 17 years old, may have failed to appreciate a danger to which he was subjected by reason of defective appliances, that his employers, charged with the obligation of furnishing appliances reasonably safe, should not have known such danger, when, by the exercise of proper care in the matter of inspection, they might have been informed thereof. The defendant in this case knew, and the contrary is not asserted, that without the fender the position to which it assigned the boy was unsafe, and it provided the fender for his protection. But it did not thereby discharge its whole duty, since the master is bound not only to exercise due care that the appliances furnished for the use and protection of the servant shall be reasonably safe and sufficient, when furnished, but he is equally bound to see that they are maintained in that condition, and, unless the danger is obvious, or he is particularly warned against it, the servant has the right to rely on the superior intelligence of the master to protect him therefrom. Budge v. R. & S. Co., 108 La. 349, 32 South. 535, 58 L. R. A. 333; Collins v. Lewis, 111 La. 741, 35 South. 886; Merritt v. Victoria Lumber Co., 111 La. 159, 35 South. 497.

The learned counsel apparently concedes the soundness of these propositions, since he argues that the fender was inspected upon the evening before the accident, but the proof, as we have seen, does not sustain the argument, the testimony of the foreman upon that subject being predicated upon the assumption that the millwright, who was not called as a witness, inspected the machinery twice a day, and would have reported any defect discovered by him. Upon the other hand, there are several witnesses who testify positively that the hole in the fender was there before, and that, both before and after the accident, pieces of wood were driven through it by the saws. If, therefore, a proper inspection had been made, the defect, the existence of which cost the boy his life, would have been discovered; and this would have been equally true if the piece, the split-

ting off of which left the hole, had been at that time only partially detached from the fender. It may be remarked in this connection that in spite of the fact that the defendant, on the following Sunday (two months in advance of the time at which it made its general repairs), repaired the fender to the extent of stopping the hole, the defendant's witnesses undertake to say that the fender was in no safer condition after such repair than before—this, of course, upon the assumption that the boy was not injured by a piece of wood driven through the hole. They, however, offer no suggestion as to any other means by which he could have come to his death. Our conclusion is that the injury complained of resulted from the negligence of the defendant, and that no negligence on the part of the boy contributed thereto. The boy was earning $1 a day (presumably) when he worked, but it is not shown what proportion of his earnings, if any, he contributed to the support of his family, or even that he resided with them. Upon the other hand, it is shown that he lived for 24 hours after being injured, and was subjected to severe pain. Under these circumstances, we are of opinion that the amount of damages awarded should be left unchanged.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed, at the cost of the appellant.