Statement of the Case.
NICHOLLS, J.
The plaintiff, an emancipated minor, seeks to recover from the de *589 fendant damages for personal injuries alleged to liave been received by himself entirely through its gross carelessness, recklessness, or incompetency, and general unlawful conduct in failing to provide safe premises in which he was to work and safe appliances with which to work. He alleged that he had in no way contributed to said injuries. He alleged: That on May 17, 1905, he was in the employ of the defendant and performing (in a mill owned and operated by it) the work for which he had been employed. That, as he was passing by the large moulder or moulding machine operated in said mill, the leather belt by means of which said machine is run or revolved broke, or became loose or unfastened in such a way that the ends of said leather belt, where the same were joined or put together, flew out and struck petitioner in the right eye, inflicting such serious injury to said eye, that the same was destroyed, and had to be removed. That the said belt was old, worn, and weak, and generally unsafe. That the ends of said belt, instead of being sewed together, were joined with brass hooks, in violation of law, and of the usual and safe method, mode, or custom prevailing in such matters.
That it is unlawful, unusual and unsafe to operate a belt connected or joined as the one referred to herein was. That when said belt broke, and the end thereof flew out, the brass hooks at the end thereof imbedded themselves into petitioner’s face and eye, thereby inflicting the serious, painful, and permanent injury complained of.
That he had suffered intense physical pain and mental anguish in consequence of said injury. That he had by the entire loss of his right eye and partial disability of his left eye been permanently injured and disabled. That his ability to obtain probable employment had been decreased, and that he was subjected to constant inconvenience, and had been damaged in his general appearance.
Defendant pleaded the general issue, and prayed that plaintiff’s demand be dismissed, with costs. The cause was tried before a jury, which returned a verdict in favor of the plaintiff of $7,500, and judgment was rendered accordingly. Defendant has' appealed. Plaintiff has answered the appeal, and prays for an increase in the judgment.
Opinion.
Plaintiff on the stand as a witness in his own behalf testified: That he was working on the lower floor of the sawmill building, in the room in which the planer mill was located. His business was to tie up moulding behind the machine as it came out. That he was not a mechanic. That when he began to work at that mill he had not received instructions of any kind from the superintendent or the foreman in charge. That he had never received warnings of any defects of any kind. On the 17th of May his eye was torn out. The belt broke and tore it out. The belt that was on the moulder that he was lying back of; a belt that was running the knives of the machine — a leather belt about four inches wide — one of the belts that helped to revolve or run the machine, it broke and struck him in the eye. At the time he was struck he was going to tell the man that was running the machine that the moulding was not coming out right; that there was a flaw in the moulding. It was his duty to do that. He was told by Mr. Barb ay, the foreman of the mill, to do so whenever the moulding was not coming out right, to tell the man to stop the machine. The moulding was then not coming out right. He .had not told Mr. Cos, but was on his way to do so when the belt broke and the end of it struck him in the right eye, tearing it out. His eyes before this were sound. He had never been troubled with his eyesight before. Dr. Bruns performed two operations on his eye. His eye was so shattered in the mill *591 that the pieces which were left in it had to toe cut out. The injury affected his left eye also. It still affected him when he read. He had to wear glasses, and could not read for any length of time. He suffered pain as the result of the injury to the right eye. He had pain in the head and high fever. He remained in bed for about a week. He returned to work on the 25th of July. At the time of the trial he was clerking for a living, getting $20 a month. When he worked at the mill he got $1.25 a day.
We scarcely think it necessary to give in detail the testimony taken touching the breaking of the belt which caused the injury to the plaintiff. In our opinion it was a belt which was not safe to be used for the purposes it was. It had been repeatedly repaired before the accident to the knowledge of those whose duty it was to know of its condition, and to act upon such knowledge. We do not think that fact can be seriously disputed under the evidence. The claim, we think, upon which defendant really relies is that the plaintiff at the time of the accident was not at the place which he occupied behind the table in rear of the moulding machine when actually engaged in work of tying the moulding. Defendant’s counsel says in his brief:
“If the plaintiff had maintained Ms position, the accident would never have happened, and this position should have been maintained, as he had received instructions from the foreman upon this point.”
Defendant on this point relies upon the testimony of its foreman, Barbay. His testimony was as follows:
“Q. Did you ever give instructions to those under you in reference to their positions?
“A. Yes, sir.
“Q. What was that instruction?
“A. Especially the graders. I always instructed them that, if anything went wrong with the machine, to call the attention of the feeder and have the machine stopped, to call his attention by hollering or whistling, and to remain in his position until the machine came to a standstill!
“Q. Did you instruct them to leave it or not to leave it?
“A. Not to leave it.”
On cross-examination witness’ testimony was as follows:
“Q. I understand you to say that you instructed the men not to leave their machine?
“A. Yes, sir.
“Q'. Why did you instruct to do that?
“A. I generally do so.
“Q. What was your reason for doing it?
“A. As I said before, graders cannot leave their work, unless there is some one to replace them.”
Gomez, one of the defendant’s witnesses, gave the following testimony:-
“Q. Did you hear Rochelle say anything before it [the belt] broke?
“A. Yes, sir.
“Q. What did he say?
“A. Rochelle went to bring a bundle of mould-ing to the bin, and when he came back he saw the pieces coming out of the machine roughly, and he hollered, ‘Cox!’
“Q. How many times did he holler?
“A. I only noticed he hollered, ‘Cox, stop the .machine!’ and Cox turned around to catch another piece to put in the machine, and then Rochelle passed around the machine, and that is when the belt struck him, and I asked him where it struck him he said ‘My eye,’ and he had his foot this way.”
Le Bailo, a witness for the plaintiff testified:
“Rochelle hollered a little before the belt broke. It started to break, and he hollered a little before. It did not break all at once; but it dragged on the floor.”
Johns, the general manager of the defendant, testified that there was considerable noise on the floor when everything was running.
We do not think Rochelle left the center of the table, the place which he occupied when tying the mouldings, in order to inform Cox that something was the matter with the moulding, but that he had (as Gomez testified) left the table to bring a bundle of mould-ing to the bin, and that, when he was returning, he saw the pieces coming out of the machine roughly, and called to Cox, “Stop the machine.” It is not pretended that he did not, incidentally to the discharge of his duty, prop *593 erly leave tlie table to go after the bundle to bring to the bin. Assuming, therefore, that Barbay had, in fact, given his directions not to leave his position if anything went wrong with the machine, but to inform the man running it (which instruction the plaintiff denies having received), it does not seem that such instructions were given with reference to any danger which might result to himself by not following the instructions, but because of the necessity, for the purposes of the work, of some one replacing him in his absence. He was not warned that he would subject himself to danger should he leave the center of the table even for a proper, legitimate purpose, and there is nothing leading up to suppose that he had reason to fear or to believe that he would run risk by doing so.
He was entitled to protection from danger in the discharge of duties incidental to his employment.
Defendant did not plead that plaintiff was guilty of contributory negligence through any act of his, nor has any such act been shown.
Plaintiff submits the following propositions to the court:
“The master is liable if he or those who who represent him fail to give proper warning of danger to his employe, and to exert himself to a reasonable extent in preventing the loss of human life.” Stewart v. Railway Co., 113 La. 531, 37 South. 129.
“It does not follow, because an ignorant boy may have failed to appreciate the danger to which he was subjected by reason of defective appliances, that his employer, charged with the obligation of furnishing him with appliances reasonably safe, should not have known such danger, when, by the exercise of proper care in the matter of inspection, he [the employer] might have been informed thereof.” Burns v. Cypress Co., 114 La. 247, 38 South. 157.
“The master is bound, not only to exercise due care that the appliances furnished for the use and protection of the servants are reasonably. safe and sufficient when furnished, but to see that they are maintained in that condition, and, unless the danger is obvious, or he is particularly warned concerning it, the servant has the right to rely upon the superior intelligence of the master to protect him therefrom.” Burns v. Cypress Co., 114 La. 247, 38 South. 157.
“The master is under a legal obligation to furnish safe appliances to his workmen, and by proper inspection and care to keep them in safe condition. In case of -an injury resulting from the breaking of part of the appliances, the master is in better condition to know the cause than the workman. As a general rule, the master must show that he has complied with the obligation imposed upon him. The workman does not, by the mere fact of taking employment, assume the risks of all accidents which might happen from the breaking of part of the appliances.” Williams v. Lumber & Shingle Co., 114 La. 806, 38 South. 567.
“The master is liable for the consequences of his negligence in failing to furnish the. servant with reasonably safe appliances for the performance of the work to which he is assigned. A slab tripper in a sawmill 'does not, by virtue of his employment, assume the risk of the dangers to which he may be exposed by-reason of the use of defective ‘dogs’ for the holding of logs on the carriage.” Moses v. Lumber Co., 114 La. 934, 38 South. 684.
“This duty [to furnish and maintain safe appliances]- is personal to the master, and must be continuously performed by him or by those whom he selects to represent him, and he is liable for its neglect whether by his representative or by himself, the danger resulting therefrom not being assumed by his servant as incidental to their employment.” Budge v. Railroad Co., 108 La. 350, 32 South. 535, 58 L. R. A. 333.
“An unskillful or even an imprudent act on the part of the workman is not necessarily a fault on his part.” Lindsey v. Lumber Co., 108 La. 468, 32 South. 464, 92 Am. St. Rep. 384.
“Plaintiff’s minor son, a day laborer, was killed while engaged in the service of the defendant, assisting in the work of placing in position a heavy steam boiler. It is shown that with proper appliances, skill, and care the work could have been done in safety. Because of the want of these defendant is held liable.” Kimbell v. Compress Co., 109 La. 903, 34 South. 39.
“The servant may to some extent trust to the knowledge and care of the master, and the master must provide a safe place for the workmen.” Foreman v. Rice Mill Co., 117 La. 227, 41 South. 555.
“The master is bound to furnish the servant with a reasonably safe place and with reasonably safe appliances in and with which to do the work assigned to him, and when by reason of his failure in-those respects, or by reason of such failure combined with the negligence of another employé, the servant sustains injury, the master is liable.” Johnson v. Christie & Lowe, 117 La. 911, 42 South. 421.
“When the defense relied on is assumption by the servant of the risk to which he is subject, it must appear with reasonable certainty either that he was specifically informed of such risk or that it was so obvious that it could not have escaped his attention, due re *595 gard being had for his intelligence and opportunities.” Johnson v. Christie & Lowe, 117 La. 911, 42 South. 421.
“This duty [to provide safe place and safe appliances] is personal to the master, and must he continuously performed by him or by those whom he selects to represent him and he is liable for this neglect, whether by representative or by himself; the danger resulting therefrom not being assumed by his servants as incidental to their employment.” Budge v. Railroad Co., 108 La. 350, 32 South. 535, 58 L. R. A. 333.
“The servant assumes the risk only of such hazards as are apparently incidental to employment intelligently undertaken.” Smith v. Sellars, 40 La. Ann. 527, 4 South. 333.
“The servant does not assume the risk of his master’s negligence.” Hough v. Railroad Co., 100 U. S. 213. 25 L. Ed. 612; Northern Pacific R. Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994; Dresser on Employer’s Liability, pp. 192-199 ; 2 Labatt on Master and Servant, §§ 551-556; Bailey on Master and Servant, § 461.
“Contributory negligence.
“There is no question of contributory negligence involved in this case. The answer was only a general denial. Hence the defendant cannot be heard to urge any plea of that nature at this time. Furthermore, the facts testified to by the defendant’s own witnesses show that in no way did the plaintiff contribute to his injury. However, we insist upon the pleading filed by the defendant, which bars them from any defense of this kind at this time.”
• We are of the opinion that the verdict of the jury and the judgment of the court rendered thereon are correct, except as to the amount of damages awarded. The amount awarded is too large It should be, and is hereby, restricted to $4,000. As so altered and amended, the judgment appealed from is hereby affirmed; costs of appeal to be paid by the appellee.