No. 2847

First Circuit

---

VIDRINE v. EVANGELINE GRAVEL CO.

---

(May 3, 1927.   Opinion and Decree.)
(June 7, 1927.   Rehearing Refused.)

---

(*Syllabus by the Editor.*)

**1.   Louisiana Digest—Negligence—Par. 39, 40.**

Evidence of contributory negligence, which was not pleaded by the defendant but which was received and become part of the record without objection is properly considered by the court where the objection to it came too late.

**2.   Louisiana Digest—Master and Servant —Par. 60.**

Where an employee's family lived in the employer's property, getting water at the well under the conditions provided, the obtaining of this water by the wife of the employee is an incident of her husband's service and employment.

**3.   Louisiana Digest—Negligence—Par. 3.**

Under Civil Code, Article 2317, we are responsible for the things which we have in our custody.

**4.   Louisiana Digest—Negligence—Par. 1.**

Negligent ignorance of the condition of one's property is equivalent to guilty knowledge.

**5.   Louisiana Digest—Negligence—Par. 1.**

To constitute contributory negligence there must be a want of ordinary care and a proximate connection between that and the injury.

**6.   Louisiana Digest—Negligence—Par. 20, 26.**

To defeat recovery on account of contributory negligence under the common law rule, the plaintiff's negligence must have entered into and formed a part of the efficient cause of the injury. If it operated only remotely and was not proximately to cause the damage, the plaintiff is not barred of redress.

**7.   Louisiana Digest—Master and Servant —Par. 65.**

The master must provide a safe place for a servant to work and this applies as well to the wife of the employee who resides on the premises of the employer.

**8.   Louisiana Digest—Master and Servant —Par. 65.**

It is the duty of the employer to cover cog wheels used for pumping water at a well which serves the family of its employees, because not to do so would expose the families of the employees to abnormal, unusual or extraordinary risks which the servant and his family does not assume as being incidental to the work undertaken by him.

9. **Louisiana Digest—Master and Servant —Par. 105, 111.**

The employee's wife does not assume the risk of being caught in revolving cog wheels and injured merely because she saw them in passing.

10. **Louisiana Digest—Damages—Par. 105.**

Where six inches of flesh was torn from one's thigh by revolving cog wheels, the tear extending completely round her thigh, the injured person suffering agony and confined to the hospital for fifty days and the injury being permanent, $1700.00 will be considered sufficient quantum of damage.

Appeal from the Thirteenth Judicial District Court, Parish of Evangeline. Hon. B. H. Pavy, Judge.

Action by Mrs. Belle Henry Vidrine against Evangeline Gravel Company, Inc.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

J. Hugo Dore, of Ville Platte, and John W. Lewis, of Opelousas, attorneys for plaintiff, appellant.

Hawthorn & Stafford, of Alexandria, attorneys for defendant, appellee.

ELLIOTT, J. Suit for damages on account of personal injuries received by being caught in cogwheel which was being operated without a cover.

This suit was before us on an exception of no cause of action, Mrs. Belle Henry Vidrine vs. Evangeline Gravel Co., Inc., Court of Appeal Reports, Vol. 4, p. 687, and was remanded for defendant's answer.

The trial resulted in the rejection of plaintiff's demand. The plaintiff appealed and the case is now before us on the merits.

For a statement of the case, according to the petition of the plaintiff, reference may be had to the opinion of this court on the exception. Plaintiff explains in her petition that the water from the pump was conducted, as it was pumped, outside of the pump house, by a pipe, and was there caught in a bucket at the mouth of the pipe. That her husband was constantly at work on defendant's dredge boat, and there was no one in her household except herself to get water when she needed it.

That on March 12, 1925, at about the hour of 2:30 P. M., needing water for household use, she went to the pump, using every precaution she knew, and started the pump. That it was then necessary for her to go around the cogwheels, which were then revolving, and go outside to get the water. That she carefully picked her way around the gears, but in some manner her outer garment was caught in the rapidly revolving wheels. That her right leg was drawn down in its teeth, grinding and rending her flesh to the bone, so that large pieces from the right thigh were torn and thrown against the walls of the pump house. That about six inches of the thigh was torn away between the hip and the knee joint, the tear extending completely around her thigh.

She claims, on account of her suffering, loss of time from her household duties and the love and affection of her husband and children and on account of permanent disfigurement of her limb, damages to the amount of $9000.00.

Defendant denies that it was under the obligation of furnishing water to plaintiff's family and that the well in question was put down and a pump installed for the purpose of providing water for the families of its employees, and alleges that there were other means of getting water, and that plaintiff could have obtained it without going to the well. It denies that it had knowledge that plaintiff or any other woman was entering the pump house and attempting to operate the pump, and alleges that its superintendent advised all the women folk in and about the premises at the time the pump was installed, not to enter the pump house under any conditions. It denies that it was necessary for any of the women to pump water, and alleges that it employed a man whose duty it was to operate the pump and that this man started the pump three or four times a day, and that he sometimes did so every two hours for the purpose of providing water.

That plaintiff's action in going into the pump house and starting the pump was an act of negligence on her part. It denies that she was injured in trying to pass the gears on her way to the door, and alleges that she walked near a window in the pump house, about three feet from the gears, not for the purpose of going outside, but in order to talk to some women on the outside, and, while talking to them, she carelessly and negligently walked near the cogwheels, which were open and in plain view, and got her skirt caught in the wheel. That her action in getting too near the wheel was negligent and careless. That ample space and passageway existed for her to get out of the pump house without getting hurt. That if her skirt was caught it was because she did not hold it and pick her way close to the wall as she should have done.

Defendant denies that it was negligent; but alleges, in the alternative, that if it was, plaintiff was guilty of contributory negligence in unnecessarily attempting to pass said open gears in plain view, and that this was the cause of her injury. That the danger of passing the gears was apparent, and plaintiff, in doing so, assumed the risk and danger incident thereto.

Mrs. Monk and Mrs. Johnson, witnesses for plaintiff, testified on cross-examination, without objection from the plaintiff, that her children were with her in the pump house at the time she was injured.

The plaintiff resumed the stand, following them, and testified in chief that these ladies were mistaken on that subject. After plaintiff had closed and Mrs. Deville, witness for defendant had also testified on direct examination, that plaintiff's children were with her in the pump house at the time she was injured, plaintiff then moved by her counsel to strike all the testimony on that subject out of the record, on the ground that it was apparent to the court that it was the purpose of the defendant to interpose, by testimony, a plea of contributory negligence on plaintiff's part, in the way stated, and that it was not admissible because defendant did not set forth in its answer such a ground of defense.

The court sustained the motion and excluded the evidence. Defendant excepted and tendered the testimony of Miss McCormick as a further witness that plaintiff's

children were with her in the pump house at the time she was injured.

Plaintiff objected to this evidence on the same ground that had been urged against that which had been excluded. The court sustained the objection. Defendant excepted and the court permitted the testimony of Miss McCormick to be taken down and annexed to a bill of exceptions. The bill is in the record with her testimony annexed. Defendant urges that the rulings were erroneous; that the evidence excluded, as well as that of Miss McCormick, was admissible. Contributory negligence is pleaded in defendant's answer. Various acts alleged to have been such are specified, but the averments of the answer are broad enough to justify the introduction of the evidence mentioned, without special reference thereto.

Plaintiff could not have excluded the testimony of Mrs. Monk and Mrs. Johnson on the subject, and leave her reply thereto; but supposing that such an act on plaintiff's part, not to be contemplated by the answer, the ruling is still erroneous, for the reason that the motion and objection came too late. The evidence had been received and become part of the record, without objection. Bell vs. Globe Indemnity Co., 107 La. 725, 31 South. 994, and cases therein cited.

As the testimony of Miss McCormick on the subject should have been received, and as she was cross-examined on the subject by the plaintiff, we take it into account and give it, as well as that excluded, the same effect and consideration as if it had been received.

Defendant contends that there was other drinking water which plaintiff could have obtained without pumping it from the well. There is no force to this contention. The evidence shows that the water in Turkey Creek, as well as that in a nearby branch and gully, was not fit for drinking; neither was that kept at the well in a tank and barrel. Defendant recognized that fact by daily sending to the well for drinking water for its workmen employed at its gravel plant. The evidence shows that defendant erected a number of small houses near its gravel pit in which the families of its employees might reside while engaged in its service. The facility was a convenience to the employees who had families, and was at the same time an inducement to men with families to engage in the work.

Seven or eight of the houses were occupied by employees and their families at the time of the occurrence in question; not as tenants, but as a perquisite of their employment, without paying rent. It was in this way that plaintiff was residing in one of these houses with her children. Her husband was one of defendant's employees, working at the plant. Defendant put down the well in question for the purpose of furnishing water for the families of its employees, residing in its quarters, and for the men working in its plant; installed in it a pump and provided machinery for operating the pump by electric power obtained from the gravel plant. There was no other drinking water available for its employees and their families living in its quarters, except this well. When the wives and children of its employees needed drinking water they had to get it at this well; and if need for water arose when the pump was not being operated by some of the men, and according to the evidence

such was a frequent occurrence, they had to pump it themselves.

Defendant contends that the women of its employees were notified not to use the pump. This allegation is shown to be untrue. The evidence is that no notice was given to any of the women that they were not to use the pump. Under the circumstances in which plaintiff and her family lived in defendant's quarters, getting water at the well in the way and under the conditions provided, was for her but an incident of her husband's service and employment by defendant.

Mr. Ragsdale, president, and Mr. Miller, superintendent of the defendant corporation, and some other of its employees, testified that they were not aware that the women were in the habit of pumping water at the well. If they did not know that the pump house was left open and that the wives of its employees were going in and pumping water, they should have known it. It was a matter about which the officers and agents of the defendant cannot plead ignorance.

"We are responsible for the things which we have in our custody." Civil Code, Art. 2317.

"Negligent ignorance of the condition of one's property is equivalent to guilty knowledge." Atkins vs. Bush, 141 La. 181, 74 South. 897; Lorenz vs. N. O., 114 La. 804, 38 South. 566; Tucker vs. R. R., 42 La. Ann. 114, 7 South. 124; Barnes vs. Beirne, 38 La. Ann. 280.

Mrs. Vidrine, Mrs. Campbell and Mrs. Monk had each learned how to start the pump and had been pumping water as they needed it for two or three weeks previous to plaintiff's injury. The fact that their wives were pumping water when it was necessary to have it was pretty well known among the employees at the plant. The plaintiff had not been warned not to enter the pump house and start the pump. She had not been told about the danger of the cogwheels. The pump, machinery and power had been placed there by the defendant and left in the condition in which it was for the purpose of supplying water to the employees and their families.

The pump house was always left open, at least not locked; the situation invited their wives to go in and start the pump, if she knew how, and get water when she needed, if there was no one else present to pump it. She was therefore not guilty of negligence in pumping water.

Defendant urges that plaintiff took her children into the pump house, and that doing so was negligence on her part, as to prevent recovery. That they were in the passageway and interfered with her passage out, causing her to walk near the revolving cogwheels and her dress to be caught by the gearing.

Mrs. Monk, Mrs. Campbell, Mrs. Deville and Miss McCormick testify that plaintiff's children were in the pump house at the time she was injured. The evidence shows that plaintiff reached the pump house ahead of them and started the pump before they arrived. They reached the place after she was caught and were on the outside, and their means of seeing inside is not clear. But Mrs. Monk hearing plaintiff scream ran inside and had to climb over the pipe, over the children and pass by the plaintiff, fastened down in the cogwheels, in order to reach the switch

and stop the machinery. She says in one place that the children appeared to be under the pipe; but they could have been just inside the door when plaintiff was caught, and, hearing her cries, were ahead of Mrs. Monk trying to get to her, but had been stopped by the pipe which was in between the cogwheels and the door.

Each of the witnesses mentioned made a circle on a diagram, offered in evidence, showing approximately as near as they could about where they each thought the children were at the time they saw them in the house. The circle which each made is indicated by their respective names identifying it, and each circle places the children at a different place. Mrs. Monk thought that when she ran into the house (note testimony, p. 116; transcript, p. 152); that the children were near the door; then she says, in another place, that she climbed over them at the pipe, but that she did not think they were near the gear; she did not think they were that far inside the house. None of them testified that the children were in between the cogwheels and the wall, not near enough to the cogwheels, at the time their mother was caught, to have caused her to come in contact with the wheels in trying to pass them on her way to the door. The mother would hardly have started outside of the pump house with them behind her, even if they had passed the cogwheels and were with her near the switch. She testifies that she left her children at the door when she went inside, and that she did not see them, and they were not with her at the time she was caught. That when she was caught and jerked down into the cogwheels she immediately screamed and

commenced crying, upon which her children ran inside, caught hold of her and began pulling at her, screaming and crying themselves. Therefore, supposing plaintiff did leave them at the door when she entered the house, and that they came inside without her knowledge, the evidence indicates that they remained near the door until she was caught in the wheels. It does not appear from the evidence that their presence in the house was a contributory cause to the accident.

"To constitute contributory negligence there must be a want of ordinary care and a proximate connection between that and the injury." Cline vs. Crescent City R. R., 43 La. Ann. 334, 9 South. 122.

"To defeat a recovery under the common law rule, the plaintiff's negligence must have co-operated with the negligence of the defendant and produced the injury complained of. As is expressed, the plaintiff's negligence must have entered into and formed a part of the efficient cause of the injury. If it operated only remotely and not proximately to cause the damage, the plaintiff is not barred of redress."

R. C. L., Subject, Negligence, Vol. 20, Section 113, pp. 136 and 137.

Defendant contends that plaintiff did not hold her skirts as she passed the cogwheels and that her failure so to do caused her to be caught. The district judge held that she was guilty of contributory negligence on that account. In his opinion he says:

"If she had done as she says she did, caught her skirts and walked carefully around the gears of the electric pump, which she necessarily knew was dangerous, this accident would not have happened. There was over 36 inches of space for her to pass and it was impos-

sible for her to have become entangled in those gears, except through fault and negligence. That being the case, she is not entitled to recover."

The plaintiff testifies that she did hold her skirts while passing and we think responsibility for what happened to her must be placed on defendant. Defendant knew that the cogwheels were uncovered. That fact is alleged in its answer and urged against plaintiff as an obvious danger which she must be considered to have assumed. Defendant knew or should have known that the pump house was left open, or at least unlocked. Defendant should have kept the house locked. And certainly if not kept securely fastened, then a notice should have been posted there, that the place was dangerous when the pump was working and that women were not to undertake to work the pump. They should have been warned that the cogwheels were dangerous when in motion. As the pump house was left open and no notice given of the danger, then defendant should have covered the cogwheels and made the pumping safe for the women. As the wives of its employees, living in its quarters, had a right to get water at the well, the method of getting it should have been made just as safe for them as the place where their husbands worked was required to be made for them. It is a well-settled rule that the master must provide for the servant a safe place in which to work.

Powers vs. Sugar, 48 La. Ann. 483, 19 South. 455.

Johnson vs. Christie & Lowe, 117 La. 911, 42 South. 421.

Parrenin vs. Crescent Stock Yard & Slaughter House Co., 120 La. 75, 44 South. 990.

That is the general rule; there are excepted occupations, but these cogwheels, near which women were tacitly invited to get water, cannot be regarded as coming within the exceptional instances.

Rapidly revolving cogwheel are an insidious and dangerous thing when uncovered; even to men accustomed to machinery and using the greatest care. The danger for women in such uncovered machinery is greater than for men. These cogs were made to be covered. The evidence shows that there were covers lying on the floor of the pump house, but they had been left off at the time of, and had not been in position for a long time prior to, the occurrence in question.

It was defendant's duty to keep these cogwheels covered for the safety of those pumping at the well which it had provided for the purpose of furnishing them water. If the covers had been on, the plaintiff would not have been injured. All that was necessary for the safety of those pumping water was to have placed the covers in position. It could have been done in a moment. Servants do not assume risks that the master can so easily save them from, and the rule applies in this case to the wives of the employees pumping water at this pump.

A proposition which has so frequently been enunciated by the courts as to have become axiomatic is that, prima facie, a servant does not assume any risk which may be avoided by the exercise of reasonable care on the master's part. In other words, the abnormal, unusual or extraordinary risks which the servant does not assume as being incidental to the work undertaken by him are those "which would

not have existed if the master had fulfilled his contractual duties".

Labat on Master and Servant, 2nd Ed., Vol. 3, Section 894, p. 2836.

R. C. L., Vol. 20, Subject Negligence, Section 101, pp. 117 to 120.

Collins vs. H. F. Lewis & Co., 111 La. 741, 35 South. 886.

Carter vs. Fred Dubach Lumber Co., 113 La. 239, 36 South. 952.

Burns vs. Ruddock-Orleans Co., 114 La. 247, 38 South. 157.

Roff vs. Summit Lumber Co., 119 La. 571, 44 South. 302.

Whitworth vs. South Arkansas Lumber Co., 121 La. 894, 46 South. 912.

Underwood vs. Gulf Refining Co., 128 La. 968, 55 South. 641.

LeBlanc vs. United Irrigation Rice Milling Co., 129 La. 196, 55 South. 761.

Defendant urges that plaintiff saw the revolving cogwheels and therefore assumed the risk in passing them. We do not think the assumption follows. Plaintiff had no experience with machinery, nor adequate knowledge of the danger she was in.

. Defendant urges that plaintiff should have stopped the pump before leaving the switch, and that if she had done so the cogwheels would not have been turning as she passed them. To exact that of plaintiff would be to hold that it was her duty to remain at the switch and pump until the buckets of the others who had come to get water were filled. She was under no obligation to remain there and do that. When her bucket was full, as the pump was working and others had come to get water, it was a natural thing for her to leave it working so that the others could get their water without having to start it. Plaintiff may have desired to get her bucket of water and her children and go on home without waiting for the others. She knew that both Mrs. Monk and Mrs. Campbell could start and stop the pump as well as she could, so it was not negligent for her to leave it working and go outside where her bucket was. She had to pass by the revolving wheels in order to do so. Plaintiff explains how it happened as follows:

"Q. Please describe to the court exactly what you did and what happened at the time you got hurt.

"A. I put my bucket down on the outside of the pump house and went in. I crawled over the pipe that comes from the well and goes through a hole in the outside, and threw the switch on, etc. I carefully walked out to see if the water was coming. (The other ladies had not arrived at that time.) The pump would not prime, so I had to go back and turn off the switch and fix it. When I turned the switch the second time the other women were down there, and when I was going out to get my water my dress got caught in the cogwheel as I passed. I turned and held my clothes, but I did not get to the pipe before the cogwheel had my clothes and pulled me to it."

Nobody was looking at her at the time. Nobody saw her at the moment she was caught. She was the only person in the pump house at the time. Her explanations of how it happened is all that there is on the subject. We cannot look on plaintiff's act, under the circumstances, as deserving

to be classed as contributory negligence; but think defendant's negligence in providing such a dangerous method for the wives of its employees to get water is the direct, proximate and responsible cause of plaintiff's injury.

The judgment appealed from is contrary to the law and the evidence and must be annulled, avoided and set aside, and judgment rendered in favor of the plaintiff.

On the question of amount: We have considered a letter which the plaintiff wrote defendant on May 28, 1925. Her injury was terrible; the agony she suffered cannot be described. She was confined to the hospital for fifty days before she could return home. At the time of the trial, more than a year and a half since the occurrence had elapsed, but she still felt some painful effects. She has suffered a permanent injury to her limb.

The defendant acted promptly and very humanitarianly in sending her to the hospital, paying for medicine and other expenses while there, amounting to about $600.00, for which no claim has been presented so far as we know. This sum will be taken into account.

The plaintiff will be allowed, on account of all her damages and injuries claimed in her petition, the sum of $1700.00, from which the $600.00 expended by defendant as above said will be deducted, leaving a balance due her of $1100.00.

The judgment appealed from is annulled, avoided and set aside, and judgment is now rendered in favor of the plaintiff, Belle Henry Vidrine, and against Evan-

geline Gravel Co., Inc., for $1700.00, less $600.00 already received, with legal interest on the balance due from judicial demand until paid.

The defendant and appellee to pay the cost in both courts.