Counsel were correct in saying they were obiter dicta.

For the reasons herein assigned, it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled, avoided, and reversed, and plaintiff's demand is dismissed, with costs in both courts.

LAND, J., recused, having presided in the court below.

(37 South. 129.)

No. 15,211.

STEWART v. TEXAS & P. RY. CO.*

(June 20, 1904.)

INJURY TO EMPLOYÉ—LIABILITY OF MASTER—
NEGLIGENCE—EVIDENCE—WARNING—
ASSUMPTION OF RISK.

1. The small stream, owing to the rising waters, was about 300 feet in width, with a strong current. There was a railroad trestle across the stream, which was threatened by the drift jammed against it. A foreman and nine men undertook to remove the débris on a dark, cold night, with insufficient light. In pulling up the logs a limb broke from a tree, and a man seated on one of the cross-pieces of the trestle was thrown into the bayou and drowned.

The weight of the testimony, as found by the jury, was that he was not sufficiently warned of the danger; that he was ordered by the foreman to the place on the trestle from which he was thrown; that the light was dim, and not such a light as should have been provided to do dangerous work on a dark night.

2. The lower court and the jury decided that there was negligence on the part of defendant.

3. Sufficient light should have been provided, the situation explained, and the danger warned against.

4. An employé who obeys his foreman cannot be charged with having assumed the peril when nothing shows that he (the employé) was aware of the great peril to which he was exposing himself.

5. The servant did not select the mode of performing the duty. The lower court decided that it was selected for him. The record does not show the erroneousness of the conclusion.

(Syllabus by the Court.)

*Rehearing denied June 30, 1904.

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

Action by Mary E. Stewart against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Wise, Randolph & Rendall and Howe, Spencer & Cocke (William Wirt Howe, of counsel), for appellant. David Thompson Land and Sidney Levy Herold, for appellee.

BREAUX, J. Plaintiff instituted this suit for damages in the sum of $10,000 for the death of her son, Horace Stewart, who was accidentally drowned in Red Bayou, about two miles west of the point where it breaks out from Red river, while in the service of the defendant company, on the 24th day of February, 1903.

The case was tried before a jury, and a verdict returned of $4,500, from which defendant appeals.

The waters of a stream known as "Red Bayou" had risen to a very high stage. February is sometimes a high-water month. On its strong current there floated down a number of trunks of trees and logs. The company owned a bridge which spanned the bayou near Gilliam, in Caddo parish. The logs and débris carried down by the current banked up against this bridge, and by their pressure threatened to carry the bridge away.

To avert the danger of destruction of the bridge, a foreman and nine men, including the deceased son of plaintiff, were sent by defendant company to remove the drift and débris. They arrived late in the evening, and soon after fell to work. The night was dark. The raft up above against the bridge was about 25 feet—that is, extended out in the stream from the bridge about 25 feet—and was jammed against the bridge all the way across the bayou. There were many trees, and some with limbs on them, in the

raft. Other trees were large. They went to work to remove the logs from the raft by pulling them by means of an engine. A rope was fastened to a log, and then to another and another, and so on; thence it ran through a snatch block, and from it the rope was taken to the engine, by means of which they were pulled out of the raft. The snatch block was used to pull the drift from the bridge in order not to pull it down. Some of the logs were pulled to the bank and others were passed by, went through, or floated under the bridge. The workmen also used a block and tackle in lifting the logs.

The bridge consisted of a trestle—piles driven in the ground and cross-pieces underneath the piling.

A pull of logs was made. There was a light under the trestle on one of the cross-pieces, a few feet above the raft. Suddenly the light went out, and deceased; who held it, fell over into the bayou, and was drowned. There was a crash heard just then, and deceased, we infer, was knocked off and fell into the water. A witness testifies that a limb of the tree was broken from its trunk and struck the trestle and knocked the young man off, and he fell at the very moment of the crash. A cry arose among the men, ropes were called for, the crew ran on the bridge, and in the excitement the foreman, who had managed to find a rope, ran back to the bridge, passed the deceased some 10 feet, returning, threw the rope to him, but failed to reach him. Thus passing him does not prove that there was ample light.

Plaintiff's first witness, Massey, who swore that he was a minister, said "that it was too dark to see him; if it had been light, he could have seen him." This was about 10 o'clock in the nighttime.

Immediately after some of the working party thought of making search for the body. The foreman said, as testified to by a witness for plaintiff, that it was useless, as they did not have sufficient light. True, this is denied by the foreman.

The lights were red hand lights carried by the workmen. There was ample light within easy reach. It was not used. The headlight of the engine was not turned on the work. It might well have thus been used.

There were two men on the raft fastening the rope to the timber, while the deceased held up the lantern, witnesses for plaintiff say, to enable them to see while at work.

Prior to the accident the decedent was standing on the bank. One of the witnesses testifies that he heard some one say to him to take a light, and get on the raft, and hold up the light for the workmen on the raft. He did not identify the person who thus directed the young man, Stewart, the deceased. He did not know the foreman. The witness who thus testified says that in attempting to pull up a tree a limb on the raft was broken, and Stewart, plaintiff's son, was knocked off. Armstrong, another witness, testifies that it was the foreman who gave the order just mentioned, and Parker, brother-in-law of plaintiff, testified that the foreman said to him after the accident that he had ordered him to go to the place from which Stewart fell and was drowned. The foreman, the witness Massey informs us, was standing on the bank near him, or he near the foreman, watching the work. We annex a sketch of the place where the accident occurred.

The testimony in the main is corroborated by the other witnesses for plaintiff, who concur in testifying that there was not a boat or skiff at hand for use in case of an accident; that the light was dim; and that no warning was given.

The testimony is stoutly contradicted by the witnesses for defendant, and particularly by the testimony of the foreman.

The foreman says that the deceased was not at his post of duty; that, if he was un-

der the bridge, he was seeking to avoid the heavy work. Now, it does appear strange that this workman sought to avoid work by going on the trestle with a light in his hands, which everybody could see and did see, except the foreman.

The jury heard these witnesses; had opportunity from personal observation to judge of the truth of their statement. They, in all probability, knew most of them, and had some knowledge of their reputation. That the work was dangerous no one denies.

Our learned Brother who presided over the court, had he been of the opinion that the defense was sustained by a preponderance of testimony, would have granted a new trial.

The weight of the testimony being, as we think, with plaintiff, from that point of view, we have to decide whether plaintiff has suffered personal injury for which the defend-ant is liable. We think this is affirmatively shown for the reason the work was rendered quite perilous and the employé was subjected to greater risks than actually necessary.

Although the foreman persistently asserts that he warned the workmen under him to be careful there is evidence going to show that his order was not heard by witnesses who were present.

In view of the danger by which all were threatened it became evidently important for the foreman to keep his little band well in hand, and to see that none exposed themselves unnecessarily.

While this foreman seemed to have been active and zealous enough, according to his own statement, he did not have his little party entirely under his eyes while performing the perilous task on a dark, cold night.

The young man was in a perilous place. He held a light in hand, which others saw

who were merely on-lookers. It behooved the foreman to see him, and issue needful orders for his protection.

The master is liable if he or those who represent him fail to give proper warning of danger to his employé, and to exert himself to a reasonable extent in preventing the loss of human life.

"It should not have been left to inference. The situation should have been explained, the danger pointed out, and unequivocally warned against." Daly v. Kiel, 106 La. 174, 30 South. 254.

As relates to signals due to every workman which should have been given just before proceeding to hoisting logs or trees, while it does appear that the engineer was amply notified to start his engine for the hard pulling up of the logs, it does not satisfactorily appear that all hands were warned to get out of the way at the particular time that the danger was the greatest, as made evident by the result. At any rate, the dangerous place at which deceased was seems to have been entirely overlooked.

The deceased was not at fault for assuming that all needful warning for his safety, under the circumstances, would be given, the service being particularly dangerous.

It has been held that the master must warn his employé of the danger of the employment when it is hazardous and perilous. This the evidence, as it comes to us, does not show was done as required. On the one hand, it is the duty of the employé, ordinarily, to obey his employer; on the other hand, it is the duty of the master reasonably to protect him from the peril required in the master's interest.

The master whose service is attended with great danger must use all reasonable means to prevent injury. There is a responsibility to which the employer, under well-considered authority, must be held, when, to protect his property, the servant must undergo extraordinary risk. It is then more particularly the duty of the master to follow as far as possible and protect his employé while at work.

The bridge was threatened at the time. On the day following it was swept away by the current. It was not reasonable to expect of the servant that he would stand back and decline the work because of the danger. He had a living to earn. Besides the good feeling which every servant owes to his employer impelled him, or should have impelled him, to put his hand to the work, and assist in saving property which was about to go to ruin.

In return for the work under these circumstances it devolves on the master to afford him at least a reasonable measure of protection. This, for one reason or another, it does not appear to us was accorded to the extent required.

This was the view of the jury. Our reading of the testimony has not resulted in finding that they were in error.

With reference to the amount of the damages, the plaintiff asks for an increase; the defendant complains that it is excessive.

The young man did send money to his mother from his wages. The amount sent (some $14 a month), and other circumstances of the case, do not lead us to infer that large damages should be allowed. He earned about $2 a day. He was 22 years of age, and in good health. We concluded to let the damages remain, as to amount, as fixed by the jury.

It is ordered, adjudged, and decreed that the judgment appealed from is affirmed.