**SNOW v. TEXAS & P. RY. CO.***

No. 5217.

Court of Appeal of Louisiana,
Second Circuit.

March 2, 1936.

---

*Rehearing denied April 30, 1936.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, and Peterman, Dear & Peterman, of Alexandria, for appellant.

Henry W. Bethard, Jr., W. H. Wamsley, and S. M. Cagle, all of Coushatta, for appellee.

HAMITER, Judge.

Bill Snow, a negro section laborer in the employ of defendant company, was drowned on July 26, 1933, in a stream, known as Robeline bayou, which flows beneath a bridge on the main line of that company, such bridge being located nine telegraph poles west of the town of Robeline in Natchitoches parish.

This suit was brought under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59, by decedent's widow, in the capacity of administratrix, seeking damages for the use and benefit of herself and two minor children of the deceased.

For several days during the month of July, 1933, prior to the death of decedent, unprecedented and torrential rains fell in the parish of Natchitoches, particularly in the vicinity of the above-mentioned bridge, causing the flow of Robeline bayou, which ordinarily might be termed inconsequential, to attain tremendous proportions in volume and velocity. As the water resulting from these rains flowed over the natural watershed toward and into the stream, it collected and carried large quantities of timber, logs, and débris that found a resting place against the piers on the upstream side of defendant's bridge.

On Monday, July 24, 1933, the foreman, who was charged with the maintenance and protection of defendant's property in that section, sought to remove the logs and débris with the aid of his bridge crew, according to his testimony, "in order to keep them from breaking the bridge loose." The logs ranged in size from one foot to two and one-half feet in diameter, and formed a mat against the trestle.

Failing in this attempt, the foreman, on Wednesday, July 26, 1933, set out from the town of Provencal with his section crew, of which decedent was a member, and journeyed several miles on a motorcar to the bridge in question with the view and purpose of again attempting the removal of the drift. No special tools or appliances for accomplishing this purpose were carried by him, his implements being those ordinarily and regularly used on right of way work, and consisting of shovels, jacks and bars, lining bars, and tamping bars. On their arrival, the foreman and three of his laborers went to and worked in the shallow water beneath the east end of the bridge, being that portion nearest to the town of Robeline; another laborer was stationed on top of the track to watch for an expected train; and Bill Snow descended to and stood on a floating log, which was wet and slippery, amongst the débris in the center of the stream, grasped the edge of the bridge for support, and was pushing the drift away. The surface of the water at this last-mentioned point was several feet below the top or edge of the bridge, and such water possessed a depth much in excess of the height of decedent.

The foreman, after working for a while, again concluded to abandon the work, and ordered his crew, including decedent, to come out of the water and wait until it subsided. In attempting to·climb onto the bridge in obedience to this order, Snow slipped from the log on which he was standing and was drowned. Efforts to save him by extending a pole found on the bridge proved ineffectual.

Plaintiff charges negligence in various particulars on the part of defendant company. The employer denies negligence on its part and pleads, in the alternative, that if it was negligent the decedent assumed the risk and also was contributorily negligent.

In the trial court judgment was rendered in favor of plaintiff, and defendant has appealed.

A most careful and thorough study of the evidence leads us to the conclusion that defendant, through its foreman, was negligent in permitting, if not ordering, Bill Snow to attempt the obviously hazardous undertaking of removing the drift without having furnished him proper and safe appliances. In the performance of this work he was not supplied with a boat, safety belt, nor life preservers, nor even a rope which could have been fastened or thrown to him for his protection. It was the duty of the defendant to

furnish to the decedent such tools and appliances ·as were needed for the reasonably safe prosecution of this extraordinary task, and the failure to perform this duty constituted negligence on defendant's part. This is true even though such appliances might not have been effectual or might not have been used if at hand. 39 Corpus Juris, 326.

But defendant. contends that decedent was not acting within the scope of his employment at the time of the accident. Its counsel argues that the trial court erroneously excluded testimony of the foreman to the effect that Bill Snow was warned against descending·onto the floating drift. This exclusion was based on allegations contained in the pleadings óf the parties. In article 6 of plaintiff's petition, she alleges "That at the time of his death, on or about the 26th day of July, 1933, and for sometime prior thereto, the said Bill Snow, deceased, was employed by the Texas and Pacific Railway Company, the defendant company, as one of a crew of workmen whose duty it was to keep that portion of said company's main and/or interstate line in the Parish of Natchitoches, Louisiana, in a state of repair; and that, particularly, on or about the said 26th day of July, 1933,· the said Bill Snow, now deceased, was employed by and working for the said defendant company, and, further, particularly, was performing the duties assigned to him by his employer, the defendant company, on said line of railroad, near Robeline, in the Parish of Natchitoches, Louisiana."

Defendant's answer to this allegation is: "Respondent admits the truth of the facts alleged in the sixth paragraph of said petition."

In a subsequent article of the petition, the employment and operations of decedent at the time of his drowning are particularized. These allegations are denied by defendant in a corresponding article. .

■ From the foregoing quoted allegations, it is apparent that defendant's pleadings are conflicting with reference to whether or not decedent, at the time of his death, was performing the duties assigned to him. The general rule of law is that conflicting pleadings are construed against the pleader; hence, we cannot state that the trial judge was in error in excluding the testimony in question. Shaw v. Board of Com'rs of Bayou Terre-Aux-Bœufs Drainage Dist., 138 La. 917, 70 So. 910.

■ But regardless of such ruling, we experience no difficulty in concluding that Snow was performing the duties assigned to him at the time of the accident. The laborer on the track was placed there for no other purpose than to protect decedent from the expected train, while in the performance of his work beneath the center of the trestle. The remaining members of the crew, including the foreman, were under the east end and needed no protection from such train. Furthermore, decedent was working only 100 feet from, and in plain view of, such members, and the reasonable inference is that the foreman knew of his operations and approved of them.

Passing to the defenses of assumption of risk and contributory negligence tendered by the defendant company, we are confronted with a more difficult problem, and to this we have given unusual consideration.

■ A well-defined distinction exists between these two defenses under the Federal Act. In Roberts' Federal Liabilities of Carriers, § 836, we find the following: "The distinction between assumption of risk and contributory negligence under the Federal Act is important for the reason that, except as to violations of federal statutes for the protection of employees, assumption of risk is an absolute defense and contributory negligence only reduces the damages."

If it be found that defendant assumed the risk in connection with his task, plaintiff cannot recover, and there would be no necessity for our considering the matter of contributory negligence. We will therefore proceed first with a consideration of the defense of assumption of risk.

■ It is a well-settled principle of law that whenever Congress enacts statutes, such as the one in question, pursuant to its power under the commerce clause, such statutes, when enforced in either state or federal courts, must be construed in the light of federal decisions. Consequently, the decisions of the state courts do not govern if they differ therefrom. Southern Railroad Co. v. ·Gray, 241 U.S. 333, 36 S.Ct. 558, 60 L.Ed. 1030; Southern Railroad Co. v. Prescott, 240 U.S. 632, 36 S.Ct. 469, 60 L.Ed. 836. Accordingly, most of the decisions considered and discussed herein are those of the federal courts.

■ There are two classes of risks that fall under the doctrine in question, ordi-

nary and extraordinary. Ordinary risks are those that are regularly connected with the occupation in which an employee voluntarily engages. An employee is conclusively presumed to have knowledge of such risks and assumes the injuries and damages flowing therefrom. Such ordinary risks are assumed by an employee whether he knows of them or not; for the dangers and risks that are usually and essentially connected with his occupation are generally considered in deciding on the compensation to be paid. Seaboard Air Line Railway v. Horton, 233 U.S. 492, 34 S.Ct. 635, 640, 58 L.Ed. 1062, L.R.A. 1915C, 1, Ann.Cas. 1915B, 475. This case, however, presents a situation where the risk was more than an ordinary one, for decedent herein was employed for the normal work of repairing and maintaining the track and roadbed, and not for the hazardous task of removing logs and débris in water of unusual depth and possessed of a swift current. The extraordinary risks are those which are not naturally incident to the occupation, and grow out of the failure of the employer to furnish a safe place to work and proper and safe appliances and tools for the work.

■ With reference to this last-mentioned class, we find the rule to be stated in Roberts' Federal Liabilities of Carriers, § 831, as follows: "But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the carrier to. exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These are known as extraordinary risks. An employee has the right to assume that his employer has exercised due care for his safety. He is not to be treated as assuming these extraordinary risks arising from defects due to the negligence of the employer unless he has knowledge of them and the danger arising therefrom, or unless the risk and danger are so obvious that an ordinarily prudent person under similar circumstances would have known the risk and appreciated the danger arising therefrom."

In the often-quoted case of Seaboard Air Line Railway v. Horton, supra, the United States Supreme Court stated: "On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employee. The risks may be present, notwithstanding the ex-

ercise of all reasonable care on his part. Some employments are necessarily fraught with danger to the workman,—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. These distinctions have been recognized and applied in numerous decisions of this court. Choctaw, O. & G. R. Co. v. McDade, 191 U.S. 64, 68, 24 S. Ct. 24, 48 L.Ed. 96, 100, 15 Am.Neg.Rep. 230; Schlemmer v. Buffalo, R. & P. R. Co., 220 U.S. 590, 596, 31 S.Ct. 561, 55 L.Ed. 596, 600; Texas & P. R. Co. v. Harvey, 228 U.S. 319, 321, 33 S.Ct. 518, 57 L.Ed. 852, 855; Gila Valley, G. & N. R. Co. v. Hall, 232 U.S. 94, 102, 34 S.Ct. 229, 58 L.Ed. 521, 524, and cases cited."

The rule is further announced in Choctaw, Oklahoma & Gulf R. Co. v. McDade, 191 U.S. 64, 24 S.Ct. 24, 25, 48 L. Ed. 96, as follows: "The question of assumption of risk is quite apart from that of contributory negligence. The servant has the right to assume that the master has used due diligence to provide suitable appliances in the operation of his business, and he does not assume the risk of the employer's negligence in performing such duties. The employee is not obliged to pass judgment upon the employer's methods of transacting his business, but may assume that reasonable care will be used in furnishing the appliances necessary for its operation. This rule is subject to the exception that where a defect is known to the employee, or is so patent as to be readily observed by him, he cannot continue to use the defective apparatus in the face of knowledge and without objection, without assuming the hazard incident to such a situation. In other words, if he knows of a defect, or it is so plainly observable that he may be presumed to know of it, and

continues in the master's employ without objection, he is taken to have made his election to continue in the employ of the master, notwithstanding the defect, and, in such case, cannot recover."

■ The case at bar involves a risk which should properly and can only be classified as an extraordinary one. Here we find decedent performing work which was not naturally incident to his employment, and the employer was negligent in its failure to exercise due care with respect to furnishing a safe place to work and suitable and safe appliances and tools for the work.

This being an extraordinary risk, we are faced with the problem of determining, according to the above-quoted rule, whether or not decedent had knowledge of defendant's omission and the danger arising therefrom, or whether or not the risk and danger were so obvious that an ordinarily prudent person under similar circumstances would have known the risk and appreciated the danger arising therefrom. It is to be noted that no differentiation or distinction between persons, with reference to degrees of intelligence, ability, or training, is provided for in the rule, but that the governing standard for its applicability is that of an ordinarily prudent person. As we have previously stated, the current and depth of the stream were abnormal and had reached enormous proportions on account of the unprecedented rains; the logs were wet and slippery, and they, together with the accumulation of débris, were only bound together by reason of the current holding them against the piling; no boat was at hand; no ropes or life preservers were suspended from the trestle or fastened around and to decedent; Snow rode from Provencal to the location in question on the motorcar which carried the appliances and tools to be used; and decedent was, certainly to his knowledge, unable to swim. A combination of these various factors and circumstances certainly provided a risk that was obviously and patently dangerous, and we must hold that it was one which an ordinarily prudent person would have observed and appreciated.

■ Plaintiff's counsel contend that decedent was not "conscious" of the danger in working on the mat of logs, and that the assumption called for by the defense of assumption of risk is a "conscious assumption." In support of this contention, the cases of Yazoo & M. V. R. Co. v. Wright (C.C.A.) 207 F. 281, and Sterling Paper Co. v. Hamel (C.C.A.) 207 F. 300, are cited. These cases are authority for the proposition that the doctrine of assumption of risk is applicable when the servant knew or was chargeable with knowledge of the danger which caused the injuries and voluntarily exposed himself to it. In the case at bar, it can be safely said that decedent was chargeable with knowledge of the danger. The dangerous situation was so plainly observable, that knowledge on the part of Bill Snow may be presumed. Choctaw, Oklahoma & Gulf R. Co. v. McDade, supra.

With further reference to the matter of "conscious assumption," the United States Supreme Court, in the case of Jacobs v. Southern R. Co., 241 U.S. 229, 36 S.Ct. 588, 591, 60 L.Ed. 970, said: "He admitted a knowledge of the 'material conditions,' and it would be going very far to say that a fireman of an engine who knew of the custom of depositing cinders between the tracks, knew of their existence, and who attempted to mount an engine with a vessel of water in his hands holding 'not over a gallon,' could be considered as not having appreciated the danger and assumed the risk of the situation because he had forgotten their existence at the time and did not notice them. We think his situation brought within the rule of the cases. Gila Valley, G. & N. R. Co. v. Hall, 232 U. S. 94, 102, 34 S.Ct. 229, 58 L.Ed. 521, 524."

It was held in the case of Miller v. Missouri Pacific Ry. Co., 9 La.App. 477, 121 So. 241, 247, decided by this court with Justice Odom, now of the Supreme Court, writing the opinion, that a foreman stepping off of an engine onto loose gravel assumed the risk of stumbling into the path of another engine, where he knew such gravel was present and appreciated the danger. In the course of the opinion it is stated:

"It is needless to refer to all the cases cited by counsel in their briefs. Both sides have cited and quoted from the case of Cincinnati, N. O. & T. P. R. Co. v. Thompson (C.C.A.) 236 F. 1, decided in 1916. In an exhaustive opinion in which the court cited the leading cases in point, it held the law to be (quoting the syllabus):

"1: 'For a servant to assume the risk, it must appear that he had knowledge of the defective condition out of which the risk arose and appreciated the danger arising therefrom.'

"2. 'An employee assumes risks attributable to his employer's negligence, where they are plainly observable though he did not know of them.' "

The case of Stewart v. Texas & Pacific Ry. Co., 113 La. 525, 37 So. 129, decided in 1904, is quoted and discussed at length in plaintiff's brief. That case was decided prior to the enactment of the Federal Employers' Liability Act, and hence is not based on and does not furnish an interpretation of such act.

■ It is argued that Bill Snow did not object to performing the work for the reason that he had a family to support, and to have so objected would have resulted in his discharge. The Federal Circuit Court of Appeals of the Sixth Circuit, held, in the case of Hallstein v. Pennsylvania R. Co., 30 F.(2d) 594, that an employee assumed the risk of a fall, even though he demanded a safety belt in vain and proceeded without it only on threat of discharge, where the danger was obvious and fully appreciated.

The case of Hatton v. New York, N. H. & H. Ry. Co. (C.C.A.) 261 F. 667, presents a situation where the employee was killed because of a gangplank having slipped on ice which had accumulated on a station platform. It was there held that the decedent having seen and known of the ice, assumed the risk therefrom.

Under the circumstances, and the rules of law applicable to this case, we can only conclude that Bill Snow, on that ill-fated day, assumed the risk of his dangerous task, and no recovery of damages for his death can be allowed.

It is unfortunate that decedent's dependents cannot be compensated for this untimely death, particularly so since defendant's negligence contributed to it and decedent was performing work at the time for the protection and safety of defendant's property. However, the courts do not make the laws; they are charged with the duty of only interpreting and applying them.

As we have found that the defense of assumption of risk should be sustained herein, a discussion of the matter of contributory negligence will serve no useful purpose.

For the foregoing reasons, the judgment appealed from is reversed, and judgment is now rendered rejecting plaintiff's demands. Costs of both courts are to be paid by plaintiff.